UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Armondo Lisasuain

    v.                                    Civil No. 12-cv-224-PB

Hillsborough County
Department of Corrections[1]


**REPORT AND RECOMMENDATION**

    Armondo Lisasuain, an inmate in the custody of the Hillsborough County Department of Corrections ("HCDC"), files this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights during his incarceration. The matter is before this magistrate judge for preliminary review to determine, among other things, whether the complaint (doc. nos. 1, 4 and 7)[2] states any claim upon which relief might be granted.

---

[1] Lisasuain does not identify individual defendants in the caption of his complaint. The narrative of the complaint, however, makes clear that Lisasuain has intended to sue the following Hillsborough County Department of Corrections officials in this action: Corrections Officer ("C.O.") McCann (first name unknown ("FNU")); Deputy Chief of Security FNU Martineau; C.O. FNU Vista; and C.O. FNU Goulding.

[2] Lisasuain titled his initial filing "Motion for Relief" (doc. no. 1), which was docketed as the complaint in this matter. Lisasuain's subsequent addenda to that filing (doc. nos. 4 and 7) have been construed as addenda to the complaint. The three documents will be construed, in the aggregate, as the complaint in this matter for all purposes.

See 28 U.S.C. § 1915A(a); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

### Standard for Preliminary Review

Pursuant to LR 4.3(d)(2) and 28 U.S.C. § 1915A(a), the magistrate judge conducts a preliminary review of pro se in forma pauperis complaints before defendants have an opportunity to respond to the claims. The magistrate judge may direct service of the complaint, or, as appropriate, recommend to the district judge that one or more claims be dismissed if: the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b); LR 4.3(d)(2).

In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Sepúlveda-Villarini v. Dep't of Educ.,

628 F.3d 25, 29 (1st Cir. 2010). To determine plausibility, the court treats as true all well-pleaded factual allegations, and construes all reasonable inferences drawn therefrom in the plaintiff's favor. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

## Discussion

I. Endangerment

Lisasuain was incarcerated at the HCDC in 2006-2007, during which time he was held in the medical unit, due to his mental health issues. During that time, Lisasuain was given a bag of hygiene items by Corrections Officer ("C.O.") Goulding. There was a razor in the bag, although inmates on the medical unit were not supposed to receive razors. Lisasuain attempted to kill himself with the razor shortly thereafter.

Lisasuain is now reincarcerated at the HCDC. Lisasuain alleges that he has been on suicide watch there since December 2010. In May 2012, Goulding again gave Lisasuain a razor, and stated, "This time do it right." On May 9, 2012, Lisasuain, presumably using the razor, slit his wrists.

In his complaint, Lisasuain asserts that Goulding's actions in May 2012 endangered his safety. The constitution requires prison officials to take "reasonable measures to guarantee the

safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). To establish unconstitutional endangerment, an inmate must assert facts to demonstrate that, objectively, he was incarcerated "under conditions posing a substantial risk of serious harm," and that the involved prison officials knew of and disregarded the excessive risk to the inmate's safety. Id. at 834; see also Mosher v. Nelson, 589 F.3d 488, 493 n.3 (1st Cir. 2009) (same standard applies to convicted prisoner's Eighth Amendment and pretrial detainee's Fourteenth Amendment endangerment claims).[3]

Lisasuain asserts sufficient facts to state an endangerment claim against Goulding. Goulding allegedly knew that Lisasuain had previously tried to kill himself after Goulding gave him a razor. Despite this knowledge, Goulding allegedly provided Lisasuain with a razor while Lisasuain was on suicide watch, and Goulding then allegedly encouraged Lisasuain to kill himself. Accordingly, in an order issued simultaneously with this report and recommendation, the court will direct service of the complaint on Goulding.

---

[3] Lisasuain has not stated whether he is a pretrial detainee or is in the HCDC serving a sentence. For purposes of this preliminary review, the distinction is immaterial.

## II. Time-Barred Claims

In addition to his allegation that Goulding provided him with a razor during his 2006-2007 HCDC incarceration, Lisasuain also asserts that officials at the prison improperly assessed hospital costs against Lisasuain's inmate account during that time. These claims concern incidents occurring more than three years prior to the filing of this action.

Section 1983 does not include a limitations period, but instead borrows the relevant limitations period applied in personal injury cases in the state where the claim arose. See Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010). In New Hampshire, that period is three years. Id.; see also N.H. Rev. Stat. Ann. § 508:4. Accordingly, Lisasuain's claims arising in 2006 and 2007 are time-barred and should therefore be dismissed from this action.

## III. Conditions of Confinement

Lisasuain alleges that since his suicide attempt on May 9, 2012, he has been housed on suicide watch status in the HCDC's Restricted Housing Unit ("RHU"), instead of in the medical department where he was previously held. In the RHU, Lisasuain states that he is subjected to treatment similar to or harsher than the treatment afforded inmates who are housed in RHU for

5

punitive discipline.  Lisasuain believes that he is being punished for previous suicide attempts.  Specifically, he states that because he is in RHU: 1) he is searched and strip-searched frequently; 2) he is unable to have any property in his cell except a pillow and wool blanket; 3) the only article of clothing he is allowed is a safety smock; and 4) his food is cold and is slid to him, uncovered, under his cell door, while other inmates get theirs through an open cell door or through a food slot in the middle of the door.[4]  Staff members have also told Lisasuain more than once that the property restrictions are in place to address their concerns over his self-injurious behavior.

### A. Cell Conditions and Property Restrictions

For purposes of preliminary review, the court assumes, without deciding, that Lisasuain had a right to possess certain property in his cell and a right not to be punished for attempting suicide.  In the prison context, a policy restricting the exercise of a right does not violate the constitution where

---

[4]One of the items that Lisasuain has not been allowed to keep in his cell is a Bible.  In his complaint, Lisasuain points to the denial of a Bible as evidence that he is being punished, but he has not asserted a separate claim alleging the denial of his right to practice his religion, and the court does not now construe the complaint to contain one.

the restriction is reasonably related to a legitimate penological interest, see Turner v. Safley, 482 U.S. 78, 89-90 (1987), provided the restriction is not an "exaggerated response" to that interest. See Beard v. Banks, 548 U.S. 521, 528 (2006). In evaluating the constitutionality of such restrictions, the court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton v. Bazzetta, 539 U.S. 126, 132 (2003); see also Beard, 548 U.S. at 528. It is the inmate's burden to disprove the validity of a prison regulation. See Overton, 539 U.S. at 132.

> [F]our factors are relevant in deciding whether a prison regulation affecting a constitutional right that survives incarceration withstands constitutional challenge: whether the regulation has a valid, rational connection to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are ready alternatives to the regulation.

Id. at 133 (internal quotation marks omitted) (citing Turner, 482 U.S. at 89-91).

Having considered Lisasuian's allegations in light of these four factors, the court finds that Lisasuain has not alleged

facts sufficient to demonstrate that that the restriction on Lisasuain's ability to keep property in his cell, the manner in which his meals were served, or any other restrictive condition applied to Lisasuain, was an exaggerated or otherwise invalid response to the legitimate objective of keeping Lisasuain safe and preventing him from harming himself. Accordingly, Lisasuain has failed to assert a claim upon which relief might be granted concerning the conditions of his confinement in the RHU, and those claims should be dismissed.

    B.    <u>Nutrition</u>

Lisasuain complains that his food was served cold and in an unsanitary manner, as it was uncovered when it was slid under his cell door. Prisons must provide inmates with "nutritionally adequate food." <u>See</u> <u>Querido v. Wall</u>, C.A. No. 10-098 ML, 2010 WL 5558915, at *5 (D.R.I. Dec. 8, 2010). An inmate's "bald assertions that the food is unsanitary and unhealthy . . . are not sufficiently serious to assert a constitutional violation." <u>Id.</u> Lisasuain asserts no specific facts regarding the contamination of his food or whether it caused adverse health effects. Instead, Lisasuain only generally asserts that the food is served in a manner that poses a risk of being unsanitary, which is insufficient to state a claim.

Accordingly, Lisasuain's claim arising out of the service of his food should be denied.

IV.  Equal Protection

The Fourteenth Amendment's Equal Protection Clause requires states to treat similarly situated people in a similar manner. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).  Generally, to establish an equal protection claim, a plaintiff must demonstrate that: (1) compared with others similarly situated, he was selectively treated; and (2) that the selective treatment was motivated by purposeful discrimination on some improper basis, such as plaintiff's membership in a particular race or religion.  See Hernandez v. New York, 500 U.S. 352, 360 (1991).

Lisasuain alleges that he was treated differently than other RHU inmates.  Lisasuain has failed to show, however, that the other inmates were similarly situated to him, aside from their proximity in housing.  Here, Lisasuain concedes that the differential treatment was predicated on his status as an inmate on suicide watch, whereas the other inmates were at the RHU for punitive disciplinary confinement.

Furthermore, Lisasuain has failed to assert facts which suggest that the differential treatment was motivated by

improper discrimination.  Where the classification at issue is not based on suspect criteria or the exercise of a federal right, the restrictions are subject to the rational basis test. See Hightower v. City of Boston, 693 F.3d 61, 83 (1st Cir. 2012).  The facts in the complaint show a rational relationship between Lisasuain's treatment as an inmate on suicide watch, and legitimate interests in safety and security.  Lisasuain has thus failed to state an equal protection claim upon which relief could be granted, and the claim should be dismissed.

V.   Opening of Lisasuain's Legal Mail

Lisasuain complains that on one occasion he received a copy of a court order in an envelope that had been opened outside of his presence, in violation of his right to confidentiality and privacy in legal mail.  To assert a constitutional violation for the opening of legal mail, an inmate must allege that prison officials "regularly and unjustifiably interfered with his legal mail."  Davis v. Goord, 320 F.3d 346, 351-52 (2d Cir. 2003) (two incidents of mail interference insufficient to state a claim without allegation of prejudice or ongoing practice); see also Conway v. Jackson, No. 5:10CV00225 JLH-BD, 2010 WL 3547226, *2 (E.D. Ark. Aug. 16, 2010) (isolated incident of jail official opening inmate's legal mail outside of inmate's presence does

10

not give rise to liability "without evidence of improper motive" or injury resulting), adopted, 2010 WL 3547225 (E.D. Ark. Sept. 7, 2010).  Lisasuain has not asserted facts sufficient to state a claim upon which relief can be granted regarding the opening of Lisasuain's legal mail, and the claim should be dismissed.

VI.  Access to Legal Mail and Materials

Lisasuain states that while he was housed at RHU, he could not have his legal mail and materials in his cell, but could only view those items during one hour periods of out-of-cell time.  To the extent Lisasuain is attempting to assert a claim that he was denied access to the courts, the claim fails, as an inmate must demonstrate more than the mere possibility that his right to access the court might be impacted; he must show that the challenged act actually "hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996); see also Boivin v. Black, 225 F.3d 36, 43 n.5 (1st Cir. 2000) ("a prisoner must show actual injury in order to demonstrate a violation of the right of access to the courts").  Lisasuain has not stated that any specific legal claim or action was in any way hindered or frustrated by limiting his access to his legal materials.  Accordingly, Lisasuain has failed to state a

plausible claim for relief for a violation of his federal constitutional rights, relating to his access to legal materials, and the claim should be dismissed.

**Conclusion**

For the foregoing reasons, the court finds that Lisasuain has stated sufficient facts to assert an endangerment claim against HCDC Corrections Officer Goulding. In an order issued simultaneously with this report and recommendation, the court directs service of the complaint on Goulding. The court further recommends that the remaining claims and defendants be dismissed in this action.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district

court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

November 16, 2012

cc:  Armondo Lisasuain, pro se

LBM:jba